# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **KENT ANDERSEN,**<br><br>　　　**Plaintiff,**<br>v.<br><br>**DERRICK BAILEY and LORENZO EDWARDS,**<br><br>　　　**Defendants.** | Civil Action File No.<br><br>_____ |

## COMPLAINT

COMES Now Plaintiff Kent Andersen (**"Andersen"** or **"Plaintiff"**) and files this Complaint against defendants Derrick Bailey (**"Defendant Bailey"** or **"Bailey"**) and Lorenzo Edwards (**"Defendant Edwards"** or **"Edwards"**) (collectively, the **"Defendants"**), pleading and averring as follows:

### NATURE OF THE ACTION

1.   Kent Andersen brings this action against Defendants for rescission, or, in the alternative, fraud in the inducement, unjust enrichment, and willful breach of contract.

### IDENTIFICATION OF THE PARTIES

2.   Plaintiff Kent Andersen is an adult resident of the State of Utah and was so at all relevant times hereto.

3. Defendant Derrick Bailey is an adult resident of the State of Georgia and was so at all relevant times hereto. Bailey may be served at 2810 Regina Drive, Atlanta, Georgia 30318.

4. Defendant Lorenzo Edwards is an adult resident of the State of Georgia and was so at all relevant times hereto. Edwards may be served at 2810 Regina Drive, Atlanta, Georgia 30318.

## STATEMENT OF JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) based on the diversity of citizenship of the parties and because the amount in dispute, excluding interests and costs, exceeds $75,000.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' fraudulent and other misconduct took place in this district.

## STATEMENT OF FACTS

7. On or about July 6, 2023, Kent Andersen and Derrick Bailey entered into a Letter of Intent to Purchase (**"LOI"**), under which Andersen would purchase the assets of HiTech Auto Towing & Recovery LLC, located at 2810 Regina Drive, Atlanta, GA 30318, (**"HiTech"**) from Bailey. A true and correct copy of the LOI is attached hereto and incorporated herein as **Exhibit "A"**.

8.  The LOI states, among other things, that the purchase price is $1,500,000.00 and that Andersen shall pay a deposit of $200,000.00 upon execution of the agreement.

9.  The LOI further states that Andersen has fourteen (14) days after acceptance of the agreement to perform due diligence. The LOI sets the closing of the purchase for August 31, 2023.

10. A few days after executing the LOI, Andersen transmitted $200,000.00 to Mr. Bailey's attorney's trust account.

11. During the due diligence period, Andersen discovered that certain information regarding the business was either not provided, conflicted with other information or representations provided to him, or was completely false. Furthermore, Andersen was unable to ascertain said information from inquiries directed at Edwards or Bailey, his agent, employees, and representatives acting on his behalf as he was not given access to certain accounts and documents until late into the due diligence period if at all.

12. During the due diligence period, Andersen frequently corresponded by email and text message with Edwards, Bailey's broker for the transaction. In several of the email communications, Edwards identifies himself as President and C.E.O. of Azure 4 Assets.

13.     On July 7, 2023, Andersen sent an email communication to Edwards regarding HiTech's 2023 financial information up to, and including, June 2023 as well as the number of cars sold in the last six months. In response, Edwards stated that "the company is averaging 50 to 60 units monthly auction sales and . . . 15 to 20 crushed or sold for parts." A true and correct copy of the July 7, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "B"**.

14.     Included with the July 7 correspondence was a chart showing the total dollar amounts for auctions, miscellaneous part sales, and impounds for the first six months of 2023. A true and correct copay of the chart is attached hereto and incorporated herein as **Exhibit "C"**.

15.     However, Andersen was unable to independently verify these alleged amounts as he was not provided access to HiTech's QuickBooks account until half-way through the due diligence period which was completely different then the information initially provided.

16.     When Andersen was finally given access to the QuickBooks account, he discovered that no transactions had been imputed into the system since shortly before he executed the LOI.

17.     A review of the June 2023 profit and loss statement showed that HiTech received $0.00 in total income for the month. However, there was an undefined

"Other Income" of $165,000.00. In his inquires with Defendants, he was unable to ascertain what this "Other Income" entailed. A true and correct copy of the June 2023 Profit & Loss Statement is attached hereto and incorporated herein as **Exhibit "D"**.

18. The June 2023 profit and loss statement did not reflect the financial performance of the business which was alleged by Bailey, Edwards, and Stella Biswah, identified as HiTech's accountant.

19. In a July 28, 2023 email correspondence, Ms. Biswah stated that the average monthly profit for May 2023 was $150,000.00 and June 2023 was $205,000.00. The June 2023 amount provided did not match the profit and loss statement, which showed a net income of $165,000.00. A true and correct copy of the July 28, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "E"**.

20. Despite serving as HiTech's accountant, Ms. Biswah's statement regarding May 2023 average profit was false as it did not match the entries in QuickBooks. In another email correspondence on July 28, 2023, Andersen stated to Edwards that the profit in May 2023 was negative. Instead of responding to this inquiry, Edwards simply states that HiTech's auto insurance was attached to his

correspondence. A true and correct copy of the July 28, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "F"**.

21. In a July 28 to July 29, 2023 email correspondence, Andersen asked Edwards when the next vehicle auction was scheduled and stated that he wanted to attend. In response, Edwards stated that the next auction would take place under Andersen's ownership of HiTech. A true and correct copy of the July 28 to July 29, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "G".**

22. Edwards statement regarding the next auction was contradictory to his previous statement that the business auctioned 50 to 60 vehicles monthly.

23. Furthermore, in an August 14 to 15, 2023 email correspondence with Ms. Biswah and Edwards, Andersen again asked for the number of vehicles sold at the most recent auction, the total sales, and the date the auction took place. Despite never providing this information before, Edwards falsely stated that Andersen already had said information. A true and correct copy of the August 14 to 15, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "H"**.

24. Bailey agreed to extend the closing date, provided that Andersen: (i) transfer an additional $250,000.00 to Bailey's attorney's trust account and (ii) make

monthly payments of $65,000.00 until he could pay the remaining balance of the purchase amount from the sale of Andersen's business.

25. Andersen transmitted $250,000.00 on or about August 31, 2023.

26. In addition to these previous transfers, Andersen provided funds directly to Mr. Bailey in the amount of $25,000.00. Bailey alleged that these funds were needed for business improvements.

27. Despite providing these additional funds and negotiating an amended closing date, Bailey and Edwards continued to not provide the information necessary for Andersen to complete due diligence.

28. Instead of providing the necessary information for the sale to close, Bailey, Edwards, and their agents, employees, and representatives continued to provide false, misleading, or contradictory information.

29. Furthermore, Andersen was unable to independently verify much of the information provided, as well as the activity of the business, as he did not receive access to HiTech's TowBook account until September 1, 2023. Toughbook is a software used by towing companies, that provides payroll, impounds and dispatch management.

30. For example, on August 7, 2023, Andersen emailed Edwards inquiring about the number of employees and how long they worked at HiTech. Despite this

direct inquiry, Edward's response only stated that "[t]he only thing I can say is that the employees are loyal and dedicated." A true and correct copy of the August 7, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "I"**.

31. Andersen was given the false assurances by Bailey that the employees would continue to work at HiTech once he purchased it. However, he discovered that half of the employees were intending to leave, and that Bailey was aware of this when he executed the LOI.

32. In addition, it was represented to Anderson that HiTech employed approximately eighteen (18) drivers in the two years prior, but at the time of the LOI there were only two employees, and when Andersen visited HiTech there was only one employee.

33. On August 30, 2023, Andersen requested a summary of all transactions conducted in August 2023 from Edwards by text message. Although Edwards responded that he would "go into the office tomorrow to get that done", no report was provided. A true and correct copy of the August 30, 2023 text messages are attached hereto and incorporated herein as **Exhibit "J"**.

34. In the same August 30, 2023 text message exchange, Andersen stated to Edwards that he was concerned about the profitability of the business. Due to less

than anticipated profits, and the obligation of monthly payments, Andersen expressed that he would be "working for free." Edwards assured Andersen that "[he] won't have to pay [these payments]."

35. Despite being aware of Andersen's concerns over the profitability of the business, Edwards did not provide this necessary information.

36. Andersen was also having difficulty getting information on the business from Ms. Biswah. Despite serving as HiTech's accountant, she claimed that she was too busy to scan documents for Andersen to review in Utah. Thus, many of the due diligence documents were only accessible at the business in Atlanta, Georgia.

37. When Andersen visited HiTech on September 1, 2023, it became apparent that Bailey was not acting in good faith in finalizing the purchase agreement.

38. Instead, it appeared that Bailey was winding up HiTech's business by not conducting vehicle auctions, not conducting regular business, and reducing his workforce.

39. During the September 1 visit, it became clear to Andersen that Bailey, Edwards, and their agents, employees, and representatives had provided false and misleading representations in order to extract money from Andersen and that Bailey did not truly intend to sell HiTech.

40. After Andersen left HiTech on September 1, 2023, he notified Bailey by telephone call that he was not going forward with the purchase agreement.

41. After the telephone call, Andersen received a text message from Edwards later on September 1, 2023 offering to reduce the purchase price. Andersen declined this offer. A true and correct copy of the September 1, 2023 text messages is attached hereto and incorporated herein as **Exhibit "K"**.

42. On September 5, 2023, Beth Rautiola, Andersen's attorney for the purchase agreement, sent an email to Corletra Mance, Bailey's attorney. Ms. Rautiola stated that:

> My client has placed a deposit with your office of $450,000.00 toward the payment of the purchase price as outlined in the attached LOI. Unfortunately, the transaction has diminished based on the results of due diligence production received on September 1, 2023. Your client finally provided the requested financials needed to complete due diligence on September 1, 2023. The financial records did not reconcile with operations records. Mr. Andersen provided notice of unacceptable accounting records to your client on Friday, September 1, 2023. My client hereby demands the return of his entire deposit.

A true and correct copy of this September 5, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "L"**.

43. On September 7, 2023, Ms. Rautiola sent an email to Andersen stating that she spoke with Ms. Mance and that Bailey was determining where the funds were used to "pay off" the assets of the business, stop certain payments, and prepare

10

a repayment plan on the following day. A true and correct copy of this September 7, 2023 email correspondence is attached hereto and incorporated herein as **Exhibit "M"**.

44. Despite this admission to repay these funds, a repayment plan was never provided, and Bailey terminated Ms. Mance's representation.

45. Upon information and belief, the $450,000.000 of Andersen's funds held in Mrs. Mance's firm's trust account was transmitted to, or for the benefit of, Bailey and/or Edwards.

46. On September 20, 2023, a notice of rescission of the agreement was sent by email to Bailey and Ewards. The Notice states that Andersen has rescinded the LOI and demands return of $475,000.00 previously transmitted by him. The Notice set the deadline to return the funds by September 22, 2023. A true and correct copy of the September 20, 2023 Notice is attached hereto and incorporated herein as **Exhibit "N"**.

47. After this deadline expired on September 22, 2023, Defendants did not respond to the Notice nor return Andersen's funds.

48. Defendants continue to be in possession, and have the benefit of, Andersen's funds.

## COUNT ONE
### RESCISSION FOR FRAUD (O.C.G.A. § 13-4-60) AGAINST ALL DEFENDANTS

49.     Plaintiff incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

50.     Under Georgia law, "[a] contract may be rescinded at the instance a party defrauded; but in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A. § 13-4-60.

51.     By virtue of the LOI, Defendants have received $475,000.00 transmitted by Plaintiff.

52.     When Plaintiff discovered that Defendants had provided fraudulent representations, withheld necessary information to complete due diligence, and acted in ways contrary to the LOI, Plaintiff sent a prompt message on September 1, 2023, that he was not going forward with the purchase.

53.     On September 7, 2023, Defendants received further notice from Ms. Rautiola rescinding the LOI and demanding return of the transferred funds.

54.     Through his counsel, Defendant Bailey alleged that he was willing to restore Plaintiff's funds and would prepare a repayment plan.

55. Defendants have received a second notice of rescission of agreement and demand of funds on September 20, 2023.

56. Despite such assertions to the contrary, Defendants have not returned Plaintiff's funds, to which they are not entitled to.

57. Defendants refused, and continued to refuse to return said funds and recognize that the LOI has been rescinded.

58. Plaintiff will suffer irreparable and substantial harm if the funds furnished by Plaintiff, in the sum of $475,000.00, with interest thereon as allowed by law, from September 5, 2023, the date of rescission, is not restored.

## COUNT TWO

### FRAUD IN THE INDUCEMENT AGAINST ALL DEFENDANTS
*(Plead in the Alternative)*

59. Plaintiff incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

60. This Count is plead in the alternative in the event the Court does not find that Plaintiff rescinded the LOI.

61. The prima facia element for Fraudulent Inducement include: (1) Defendants made a false statement regarding a material fact; (2) Defendants knew or should have known the representation was false; (3) Defendants intended that the representation induce Plaintiff to act on it; and (4) Plaintiff suffered damages in

13

justifiable reliance on the representation. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010).

62. Defendants directly and through their agents, employees, and representatives made numerous false statements of material facts; including but not limited to, the profitability of the business, financial records, that vehicle auctions were conducted each month and that the business was continuing to conduct said auctions, that the business was still functioning as a going concern, and that employees will stay on once the business was purchased.

63. Defendants knew that the statements made, and their representatives made on their behalf, were factually false and untrue at the time these statements were made to Plaintiff.

64. The Plaintiff relied on Defendants' false statements and as a result was induced to transmit $475,000.00 to, or on the behalf of, the Defendants.

65. That Plaintiff incurred direct injury and damages as a result of Defendants' acts.

## COUNT THREE
## UNJUST ENRICHMENT AGAINST DEFENDANT BAILEY
*(Plead in the Alternative)*

66. Plaintiff incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

67. This Count is plead in the alternative in the event the Court does not find that Plaintiff rescinded the LOI.

68. Plaintiff conferred a benefit on Defendant Bailey in the form of payment of monies to purchase HiTech.

69. In exchange for these payments, Defendant Bailey provided false or misleading information and representations intended to induce Plaintiff to continue to transmit payment of monies.

70. Plaintiff conferred a financial benefit on Defendant Bailey but did not receive his expected benefit from him.

71. Defendant Bailey readily accepted, retained, and enjoyed these benefits from Plaintiff and knowingly benefited for his unjust conduct – at Plaintiff's expense – by providing false and misleading representations for due diligence and withholding necessary information relevant to the purchase agreement

72. Defendant Bailey knew that Plaintiff reasonably expected to receive truthful and factually accurate information to complete due diligence.

73. It is unjust for the Defendant Bailey to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning HiTech from Plaintiff, who would not have continued to pursue the

purchase agreement and transmit further payments of monies, but for the Defendant Bailey's misrepresentations and omissions.

74. Equity cannot in good conscience permit Defendant Bailey to retain the benefits derived from Plaintiff through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

## COUNT FOUR
### WILLFUL BREACH OF CONTRACT AGAINST DEFENDANT BAILEY
*(Plead in the Alternative)*

75. Plaintiff incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

76. This Count is plead in the alternative in the event the Court does not find that Plaintiff rescinded the LOI.

77. The parties entered into an enforceable contract.

78. Plaintiff has performed, has substantially performed, or was excused from performing due to Defendant Bailey's material contract breaches, any and all necessary conditions precedent, dependent obligations, and/or dependent covenants owed under the LOI.

79. Defendant Bailey's material breaches include but are not limited to: (i) fraudulently misrepresenting the financial conditions and profitability of the

business; (ii) hide or obscure necessary information and documentation needed by Plaintiff to conduct due diligence; (iii) fraudulent representations that he intended to complete the sale of the business when acting counter to such representations.

80. Defendant Bailey's material breaches were both intentional and willful since he knew such representations were false at the time such statements were made and such representations were intended to induce Plaintiff to make payments of monies for the benefit of the Defendant Bailey without intending to provide the benefit the parties contracted for.

81. As a direct result of Defendant Bailey's willful material breaches of contract, Plaintiff sustained contract damages in an amount to be determined by the trier of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kent Andersen prays for and requests the following relief:

A. That this Court exercise its subject matter jurisdiction in this matter;

B. That this Court exercise its jurisdiction over the parties herein;

C. That Defendants be compelled, pursuant to Summons and judicial process, to appear and answer the allegations of this Complaint;

D.	That Kent Andersen have judgment against Defendants in the sum and amount of $475,000.00, plus prejudgment interest, attorney's fees, and the costs of this action; and

E.	That Kent Andersen have all other and further relief deemed appropriate by this Court.

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
Attorney for Plaintiff
699 Piedmont Avenue
Atlanta, Georgia, 30308
(404) 564-9300
cmccord@joneswalden.com